# Buchanan's Appeal.

A testator devised land to his son William, "he paying the legacies hereafter enjoined on him to pay," one was to a daughter, Nancy. He devised other land to his son John, he to pay legacies. He then directed, "should either of my two sons die without issue, that such son's portion shall pass to the survivor." William died intestate without issue. *Held*, 1. That on William's death his devise passed to John. 2. That Nancy's legacy was not a charge on William's land. 3. That the legacy not having been paid in William's life was not a charge in the hands of John.

November — 1872. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the Court of Common Pleas of *Washington county:* Of October and November Term 1872, No. 150.

By virtue of an Act of Assembly for that purpose, passed April 12th 1869, viewers appointed by the court reported in favor of

[Buchanan's Appeal.]

enlarging a burial-ground by laying off from the lands of William Buchanan, one and one-half acres of land for which they awarded him $200; this sum was paid into court, May 15th 1871. William Buchanan died July 27th 1871, intestate, without issue.

On the 21st of August, John Buchanan petitioned to be allowed to take the money out of court, averring that the land was originally the property of John Buchanan, deceased, the father of the petitioner and William Buchanan; and that William derived his estate in the land by the will of his said father, which was proved May 2d 1837; that under the same will upon the death of William without issue, the land passed to the petitioner in fee, and he was therefore entitled to the money in court.

Nancy Buchanan, a sister of William, in answer to the petition, averred that under the will of John Buchanan, deceased, William took a fee; that she was entitled to a legacy of $300, which was charged on the land of William Buchanan, deceased; that the money in court represented the land and was subject to the payment of her legacy; and that she was entitled to a share of the $200 as an heir of William.

The opinion of Judge Acheson approved by the Supreme Court, contains all that is necessary for the understanding of the case.

The opinion is as follows:—

" The respondent, Nancy Buchanan, resists the application of her brother John to take the money out of court on two grounds :

"1st. She claims that the legacy of $300 bequeathed to her by the will of her father, John Buchanan, was a charge upon the land devised by said will to her brother William, and that the fund in court, having been derived from a portion of said land, should be applied to the payment of her legacy.

" 2d. That William Buchanan took an estate in fee simple in the Pennsylvania land, under his father's will, and having died intestate and without issue, she, as one of his heirs at law, is entitled to a share of the money in court.

"The will of John Buchanan, bearing date June 10th 1836, contains the following provisions:—

" ' Item—I give and bequeath to my son William Buchanan, all my lands on the Pennsylvania side of the line dividing said state and Virginia, which I now live on, he paying the legacies hereafter enjoined on him to pay—to my daughter Nancy four hundred dollars, in the manner following, viz : two years after my decease he shall pay fifty dollars, and fifty dollars annually till all is paid.'

" ' Item—I give and bequeath to my son John Buchanan all my lands adjoining on the west side of the state line, he agreeing to pay two hundred dollars to my daughter Jane in manner following, viz. : two years after my decease he shall pay fifty dollars annually until all is paid.'

22 P. F. Smith—29

" ' To prevent mistakes, I hereby order that one hundred dollars of the above-mentioned four hundred dollars ordered to be paid by my son William to my daughter Nancy shall be paid to my daughter Jane in the same way as above ordered.'

" On the 25th of January 1837, the testator added the following codicil to his will :—

" ' It is my will and desire that, should either of my two sons William or John die without issue, that such son's portion of the land above mentioned shall pass to the survivor; and in that event the survivor shall pay the following sums, viz.: to my son Walter one hundred dollars, and to each of my daughters, Nancy and Jane, one hundred dollars; the said sums to be paid one-half in one year and the remaining half in one year thereafter.'

" The testator died in 1837, and his sons William and John took possession of their respective portions of the land, as devised to them by his will. On the 27th of July 1871, William died intestate and without issue, leaving unpaid the legacy of $300 bequeathed to his sister Nancy.

" That this legacy was a personal charge upon William, for which his estate is liable, there can be no doubt; but if he did not leave personal assets sufficient to pay the legacy, the question is, was it made a charge upon the land, so that if William's estate therein has become extinct, the land is still subject to its payment in the hands of John, the surviving devisee?

" In Wright's Appeal, taken up from this county, and reported in 2 Jones 257, the devise was to testator's son Thomas. If he chose to accept, he was *to pay* $1700 to legatees. In deciding the legacy not to be a charge upon the land, the Supreme Court reiterated the rule laid down in Montgomery v. McElroy, 3 W. & S. 371, that ' to make a legacy a charge upon land devised, it is necessary it should be declared so by express words, or that it may be inferred from the whole will that such was the intention of the testator.'

" Tower's Appropriation, 9 W. & S. 103, was a devise of all the testator's real and personal estate, the devisee ' paying the several legacies hereinafter mentioned.' The design to charge the land was held to arise from the blending of the real and personal estate, the legal inference being that the devisee was to have nothing till the legacies were paid.

" The latest case in the books is that of Hamilton v. Porter and Wife, 13 P. F. Smith 332, where the language used was : He ' is to take the within-mentioned ' land' at my death, and pay $700,' &c. There is no appreciable difference between the expression here employed and that we are considering. In both cases the devisee was to pay a specified sum, for which, upon his acceptance, he was personally liable. There is no expressed intention to

create a lien upon the land for the benefit of the legatee, nor can it be inferred from the tenor of the whole will.

" The devise to William Buchanan of the Pennsylvania lands vested in him an estate in fee simple under the ninth section of the Act of 1833. What, then, is the effect of the qualifying words of the codicil upon the absolute estate thus given to him by the will? It is claimed on behalf of his brother Walter and sister Nancy that the design of the codicil was to provide merely for the contingency of the death of William or John without issue in the testator's lifetime, and that William, having survived his father, took an indefeasible estate in fee simple. The presumption is that the testator did not expect to outlive the sons between whom he divided the inheritance, and therefore this construction could be resorted to only on the ground of necessity, and to carry into effect the manifest intention of the will. The provision in the codicil that, upon the death of William or John without issue, his portion of the land should pass to the survivor, and in that event the survivor should pay legacies to Walter, Nancy and Jane *in one and two years thereafter*, indicates an intent adverse to such construction, and shows conclusively that the contingency must be referred to a period subsequent to the testator's death; otherwise the time fixed for the payment of the legacies might arrive in the testator's lifetime, and before the devise to the sons, or the survivor of them, could take effect. Moreover, the $300 legacy bequeathed by the will to Nancy, which William was to pay, would fail for want of any provision for its payment, in the event of his dying without issue in his father's lifetime. We are of opinion that William Buchanan did not take an absolute and indefeasible estate in fee simple in the Pennsylvania land at the death of his father.

" It matters not what we call the estates given by the will to William and John—whether estates tail, with vested cross-remainders in fee in favor of the survivor, or fee simple estates, upon condition that the son first dying should leave issue, and failing to do so, his estate should pass to the survivor as an executory devise. The codicil providing that the survivor should pay the legacies within a *prescribed time* to persons *in esse*, the testator could not have contemplated an indefinite failure of issue, but a failure of issue at the death of William or John, whichever of them should first die. The estate given to William, therefore, might be regarded as a conditional fee, with executory devise over to John; but whatever his estate might be, it became extinct upon his death without issue, and by the limitation of the will the land passed to John as the survivor: 5 Casey 490; 12 Harris 249; 13 P. F. Smith 485.

" It follows that the respondents, Walter and Nancy Buchanan, have no interest in the land as heirs at law of their brother William Buchanan, and that the money in court belongs to John Bu-

[Buchanan's Appeal.]

chanan, the petitioner, and it is accordingly ordered to be paid over to him by the prothonotary."

The respondent appealed to the Supreme Court, and assigned the decree of the Court of Common Pleas for error.

*S. A. McClung* and *Braden & Miller*, for appellants, cited: As to the legacy being a charge on the land: Wright's Appeal, 2 Jones 256; Hoover *v.* Hoover, 5 Barr 351; McFait's Appeal, 8 Id. 290; Downer *v.* Downer, 9 Watts 60; Drake *v.* Brown, 18 P. F. Smith 223; Holliday *v.* Summerville, 3 Penna. R. 533. As to William's devise being a fee: Eichelberger *v.* Barnitz, 9 Watts 447; Fahrney *v.* Holsinger, 15 P. F. Smith 388; Caldwell *v.* Skilton, 1 Harris 152; Lifford *v.* Sparrow, 13 East 359; Jenour *v.* Jenour, 10 Vesey 562; Gillard *v.* Leonard, 1 Swanston 161; Clayton *v.* Lowe, 5 Barn. & Ald. 636; Biddle's Estate, 4 Casey 59; Fulton *v.* Fulton, 2 Grant 28; Schoonmaker *v.* Stockton, 1 Wright 461; Shutt *v.* Rambo, 7 P. F. Smith 149.

*Crummine & Patterson*, for appellee, as to the charge on land cited Wright's Appeal, 2 Jones 256; Brandt's Appeal, 8 Watts 198; Montgomery *v.* McElroy, 3 W. & S. 370; Mellon's Appeal, 10 Wright 165; Dewitt *v.* Eldred, 4 W. & S. 414; Miltenberger *v.* Schlegel, 7 Barr 241; Hackadorn's Appeal, 1 Jones 86; Hamilton *v.* Porter, 13 P. F. Smith 332. As to the estate in William: 2 Jarman on Wills 665, 671; 2 Powell on Devises 763; Jessup *v.* Smuck, 4 Harris 327.

The opinion of the court was delivered, January 6th 1873, by

READ, C. J.—Two questions are raised upon this appeal from the decision of the court below, awarding the damages arising from the taking of the land for the enlargement of a burial-ground to her brother, John Buchanan.

These questions arise upon the will and codicil of John Buchanan, their father, admitted to probate on the 2d May 1837.

The appellant claims: 1. That the legacy of $300 bequeathed to her by the will of her father, John Buchanan, was a charge upon the land devised by said will to her brother William, and that the fund in court, having been derived from a portion of said land, should be applied to the payment of her legacy.

2. That William Buchanan took an estate in fee simple in the land in Pennsylvania, under his father's will, and having died intestate, and without issue, she as one of the heirs at law is entitled to a share of the money in court.

The learned judge in the court below, in a carefully drawn opinion, negatived both these claims, and held that the money in court belonged to John Buchanan, and ordered it to be paid to him. We, agreeing with the court below, for the reasons assigned by them,                    The said order or decree is affirmed.[1]

[1] Vide McFadden *v.* Johnson, *antea* 335.—REP.