RACHEL A. MORGAN,

*vs.*

AARON M. MORGAN, WILLIAM B. MORGAN, HUBBARD MORGAN
and JOSEPH M. MORGAN.

*Sussex, Jan.* 23, 1924.

Legacies are chargeable on personal estate, and may be charged upon real estate when an intent is either expressly or by clear implication manifested from the will; but resort must not be had to the realty until the personalty has first been exhausted, unless it has been exonerated by the will.

Where testator by will devised land to his sons and directed them to make certain payments to their mother as long as she lived alone, *held* that the payment was not a charge on the lands devised to the sons, in absence of language in the will expressly so stating, or from which an intent to that effect could be implied.

That testator directed his devisees to pay his debts and funeral expenses in practically the same language as he directed them to pay an annual sum to the widow did not have the result of charging such sum on the land.

A devise of real estate with a bare direction to pay money to a named person does not raise a trust against the devisee.

BILL TO CHARGE A LEGACY ON LAND. Bradbury Morgan, of Cedar Creek Hundred, Sussex County, by his will provided as follows:

"First. I give, devise and bequeath to my wife Rachel A. Morgan the house and lot in Lincoln during her natural life, so long as she remains my widow. At the death of my wife, Rachel A. Morgan or in the event of her re-marrying or living with another man, the said house and lot shall then become the property of my four daughters, namely Jennie Coverdale, Sarah A. Clendaniel, Etta Deputy and Raie Morrison, share and share alike, their heirs and assigns forever.

"Second. All other land and real estate of which I shall die possessed wherever situated to be equally divided between my four sons, share and share alike, namely, Aaron M. Morgan, William B. Morgan, and Hubbard Morgan, their heirs and assigns forever, Joseph H. Morgan for and during his natural life. At the death of my son, Joseph H. Morgan, his part or share in the above mentioned real estate shall be equally divided between my three sons, share and share alike, namely Aaron M. Morgan, William B. Morgan and Hubbard Morgan, their heirs and assigns forever.

"Third. I direct that all my personal property except enough household goods for my wife, Rachel A. Morgan, be sold and the proceeds from the sale together with all monies in hand equally divided between my four daughters, share and share alike, namely, Jennie Coverdale, Sarah A. Clendaniel, Etta Deputy and Raie Morrison, their heirs and assigns forever.

"Fourth. I direct that my four sons herein named shall pay all my just debts and funeral expenses, share and share alike. I further direct that my four sons herein named shall pay my wife, Rachel A. Morgan, one hundred dollars, each and every year, that is to say each son herein named shall pay my said wife twenty-five dollars each and every year during her natural life or so long as she remains my widow. I further direct that if my said wife lives alone my four sons shall furnish her firewood enough for her use.

"And I do hereby constitute and appoint my son Aaron M. Morgan, as executor of this my last will and testament, he to choose three disinterested men to act with him. If three men cannot agree then five, and for their council Andrew J. Lynch."

The annual payment of one hundred dollars not having been paid, nor the firewood furnished, to the widow by some of the sons, the present bill was filed against them all for the pupose of establishing the charges created by the fourth item of the will as a lien upon the land devised by the second item to the sons.

The cause was heard on bill, amended bill, answers, testimony of witnesses and exhibits.

*James M. Tunnell*, for the complainant.

*John M. Richardson* and *Frank M. Jones*, for the defendants.

The Chancellor. The defendants resist the bill, first, because they contend that the payments directed to be made to the widow under the fourth item of the will were not intended by the testator to be charged on the land devised to the sons, and second, because they contend the widow has formally released all her claims.

First. That legacies are chargeable on the personal estate is, of course, well settled. That they may however be charged upon the real estate when an intention so to charge them is either expressly, or by clear implication manifest from the will, is equally well established. In our own State illustrations of when the real estate is chargeable with legacies may be found reported in *Hil-*

*ford, Adm'r., v. Way,* 1 *Del. Ch.* 342; *Rambo, Ex'r., v. Rumer,* 4 *Del. Ch.* 9; *Ferris, Adm'r., v. Ferris, et al.,* 11 *Del. Ch.* 171, 98 *Atl.* 215. But where the real estate is so chargeable, resort is not to be had to it until the personalty has first been exhausted, unless it has been exonerated by the will. *Cooch's Ex'r. v. Cooch's Adm'r., et al.,* 5 *Houst.* 540, 1 *Am. St. Rep.* 161, *affirming* 5 *Del. Ch.* 161; *Getchell v. Rust, et al.,* 8 *Del. Ch.* 284, 68 *Atl.* 404. These cases emphasize the principle that the testator's silence confers on his real estate an exemption from the burden of legacies, just as at common law a like silence left lands relieved of the burden of his debts.

In the instant case the payments to the widow are directed to be made by the devisees of the land. The sons are given the land in the second item and later, in the fourth item, they are directed to make an annual payment of twenty-five dollars each to their mother and to supply her with firewood in case she lives alone. Being very strongly possessed by the feeling that these sons who had received their father's bounty ought cheerfully to regard his direction with respect to the small payment which he provided for their mother, I have perhaps strained at reason to discover something in this will which would justify the conclusion that its language indicates an intent to charge the sums on the land. I am unable, however, to do so. Where a devisee takes land and is directed to pay to another a certain sum either at once or in designated installments, the charge thus imposed is not to be regarded as laid on the land unless language appears in the will which expressly so states, or from which an intent to that effect is impliedly to be gathered. Not only are the Delaware cases (*supra*) to this effect, but the following cases from other jurisdictions are likewise so. *Glen v. Fisher,* 6 *Johns. Ch.* (*N. Y.*) 33, 10 *Am. Dec.* 310; *Id.,* 6 *Johns. Ch.* (*N. Y.*) 36; *Brandt's Appeal,* 8 *Watts* (*Pa.*) 198; *Montgomery v. McElroy,* 3 *Watts & S.* 370, 38 *Am. Dec.* 771; *Dewitt v. Eldred,* 4 *Watts & S.* (*Pa.*) 414; *Hamilton v. Porter,* 63 *Pa.* 332; *Buchanan's Appeal,* 72 *Pa.* 448; *Van Vliet's Appeal,* 102 *Pa.* 574; *Haworth's Appeal,* 105 *Pa.* 362. This case appears to me to be one where a devise was made to the sons with a charge upon the persons of the devisees, and not upon the land devised to them, to pay to their mother the annual sum and furnish to her the firewood mentioned in the fourth item.

The case of *Taylor v. Reynolds* in our own State, reported in 2 *Houst.* 285, bears on the question now being discussed. That was a case of assumpsit for a legacy which the defendant's testate was directed by his father's will to pay "in consideration of the two-thirds of my lands in Nanticoke Hundred, which I have given him after the death of his mother." The case is very meagerly reported. The court non-suited the plaintiff on the ground that "an action at law would not lie for a legacy of this kind." In what light the court regarded the legacy is left to speculation. I assume it was regarded as charged on the land, and being so charged it was held that an action at law against the person for its recovery would not lie. See the dictum of Kennedy, J., in *Dewitt v. Eldred,* 4 *Watts & S. (Pa.)* 414, 422. If this be the *ratio decidendi* of that case, then it is an authority for the proposition that where the payment of a legacy is directed to be made expressly as a consideration for the devise, an intent is thereby to be inferred that the devised land is subject to the burden of the legacy. If it be conceded that this proposition is sound, it can be of no avail in the instant case for here the language contains no such express provision. When it is considered that a legacy charged upon the person of a devisee is regarded as a condition annexed to the devise and in reality as a consideration therefor, it is to be very seriously doubted whether an express statement by the testator (as in *Taylor v. Reynolds, supra*), of that which the law without such express statement would understand him to mean, can have the effect of charging on the land the legacy which otherwise according to all the authorities would be charged on the person only. If the case from 2 *Houston* is to be understood as I have suggested, then before accepting it as sound I should prefer to hear the question more fully argued than the report of that case indicates it to have been. It is sufficient for the present to say that the most that case can be said to do is to add but another illustration to the kind of language from which the law will infer an intent to charge land with legacies, viz., that where the testator *expressly* states the payment of the legacies to be in consideration of the devise, the land shall be charged with their payment. If it is conceded that such a proposition is sound, there is no such express statement in the instant case making it applicable. When the language is as it is here, the

authorities so far as I can discover are clearly to the effect that the land is not charged.

The fact that the testator in the fourth item of this will directed his sons to pay his debts and funeral expenses in practically the same language as he directed them to pay the annual sum to the widow, cannot have the result of charging the latter on the land. It was so held in *White Ex'r., v. Kauffman,* 66 *Md.* 89, 5 *Atl.* 865, a case quoted from with approval by Chancellor Nicholson in *Getchell v. Rust, et al.,* 8 *Del. Ch.* 284, 294, 68 *Atl.* 404.

The bill in this case is framed on the theory that the payments directed by the fourth item are charged on the real estate devised to the sons. In the brief filed by the complainant, however, this theory appears to have been abandoned, for the brief is prepared upon the conception that the devise to the sons was made in trust for the widow's benefit to the extent of the money and firewood specified in the fourth item. No attempt is made on the brief to sustain the bill's theory of a charge on land. This, I assume, is because of a realization by the solicitor for the complainant that the theory of such a charge is not sustainable by authority.

I am unable to see how it can be said that the devise to the sons was in trust, as is now contended. It is not expressly declared by the will so to be. Nor is there any language from which any implication to that effect can be gathered. The cases cited by the complainant in support of this theory are entirely dissimilar in principle to the one here presented. They are all cases where language is found in the will from which a trust is raised by implication. In one of them there was a devise "for the purpose of supporting the family," and the question was whether this language created a trust. In all the other cases cited by the solicitor for the complainant the question in each was whether an intent to create a trust was to be gathered from certain precatory language which the testator had used in connection with the devise. None of these cases hold that a mere devise of real estate with a bare direction to pay money to a named person impliedly raises a trust against the devisee. If language such as is here found can be said to raise the implication of a trust, then it would be difficult to conceive what modes of expression would be left for the applica-

tion of the doctrines relating to charges upon land as distinguished from charges upon the person.

For the reasons given, the bill must be dismissed.

Second. It is not necessary for me to consider the issue of fact raised by the second ground of defense, to-wit, whether the complainant released her claim. I make no finding on that question, leaving it an open one, so that if the complainant proceeds elsewhere to recover the sums claimed to be due she will not be confronted by a finding against her on the fact of the release.

A decree will, therefore, be entered dismissing the bill with costs on the complainant.